UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

RONNIE LAMONT HARSHAW,    )
    )
    Petitioner,    )
    )
v.    )    No.:  3:17-CV-479-TAV-DCP
    )
WARDEN BERT BOYD,    )
    )
    Respondent.    )

## **MEMORANDUM OPINION**

This civil case is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 [Doc. 1]. Petitioner is challenging his guilty plea as "unlawfully induced . . . or . . . involuntarily entered," asserting that his counsel was ineffective and that his sentence was unconstitutional[1] [Doc. 1, 7]. Respondent filed a response in opposition to the petition [Doc. 49] and the state court record for Petitioner's

---

[1] On the signature page of his petition, Petitioner also generally refers to the possibility that the Court may find his claims amount to a violation of his constitutional rights "when considered cumulatively" [Doc. 7 p. 2]. But to the extent that this reference could be liberally construed as a claim for relief under § 2254, Petitioner did not exhaust a cumulative error claim with the Tennessee Court of Criminal Appeals ("TCCA") [Doc. 48-4]. And even if he had, such a claim is not cognizable in this action, as "[t]he Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)). Moreover, as set forth more fully herein, the Court does not find that any of Petitioner's claims have merit, and where "individual claims are all essentially meritless, [a petitioner] cannot show that the cumulative error[s] violated his constitutional rights." *Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)). Accordingly, Petitioner is not entitled to relief under § 2254 for any cumulative error claim.

post-conviction proceeding[2] [Doc. 48]. Petitioner filed a reply [Doc. 60]. After reviewing the relevant filings and the state court record, the Court finds that Petitioner is not entitled to habeas corpus relief under § 2254. Accordingly, no evidentiary hearing is warranted, *see* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the habeas corpus petition will be **DENIED**, and this action will be **DISMISSED**.

## I.    BACKGROUND

Petitioner's wife, Trisha Harshaw ("Harshaw"), from whom he was separated, had an order of protection against him that prevented him from assaulting her or threatening her with violence. *Harshaw v. State*, No. E2015-00900-CCA-R3-PC, 2017 WL 1103048, at *1 (Mar. 24, 2017) ("*Harshaw v. State*"). One night while this order of protection was in place, Petitioner called Harshaw and sent her threatening text messages indicating that "he was on his way over." *Id.* Petitioner then arrived at Harshaw's apartment, where she and others were located, and banged on the door, and people in the apartment saw Petitioner and heard his voice. *Id.* Soon after this, bullets pierced a window in the apartment, and some debris injured Harshaw's foster daughter. *Id.*

After this shooting, police found ammunition matching the type used in the shooting at an apartment where Petitioner was staying and learned that Petitioner had a Carbine rifle, which is a distinctive gun that is "not very prevalent" and the type of gun that fired into

---

[2] Respondent did not file the technical record for Petitioner's criminal proceeding. However, as it appears that the record for Petitioner's post-conviction proceeding contains the relevant parts of Petitioner's criminal proceeding record, including the transcript of Petitioner's guilty plea hearing and the presentment, the Court has not asked Respondent to file any additional parts of the criminal proceeding record. Rule 5(c) of the Rules Governing § 2254 Cases.

Harshaw's apartment. *Id.* Also, Petitioner, a member of the "Vice Lords" gang who had prior convictions, gave a statement to police in which he admitted that he was present at the shooting and that he drove "a fellow gang member," who Petitioner said was unarmed, to Harshaw's apartment. *Id.*

Based on this shooting incident, a grand jury returned a presentment charging Petitioner with eleven offenses [Doc. 48-2 p. 39–43]. Petitioner faced a maximum sentence of one-hundred and forty years if convicted of these charges. *Harshaw v. State*, at *1. However, as Petitioner agreed to plead guilty to two charges of attempted first-degree murder, three charges of aggravated assault, reckless endangerment by firing into an occupied habitation, two charges of being a convicted felon in possession of a firearm, and two charges of employing a firearm during the commission of a dangerous felony arising out of the shooting [Doc. 48-6 p. 1–3], he "received an effective sentence of thirty-six years" [*Id.* at 1].

After Petitioner pled guilty to the charges against him arising out of the shooting at Harshaw's apartment, he did not file a direct appeal of his convictions, but instead filed a pro se petition for post-conviction relief asserting a claim that his guilty pleas were unlawfully induced or involuntary, claims for ineffective assistance of counsel, and claims for prosecutorial misconduct [Doc. 48-1 p. 4–13]. Appointed counsel then filed an amended petition asserting claims for ineffective assistance of counsel and denial of due process [Doc. 48-1 p. 21–25]. After a hearing [Doc. 48-2, Doc. 48-3], the post-conviction court denied the petition [Doc. 48-1 p. 38]. Petitioner appealed the denial of his post-

3

conviction to the Tennessee Court of Criminal Appeals ("TCCA"), which summarized

Petitioner's underlying criminal and post-conviction proceedings in relevant part as

follows:

> In a multi-count indictment, the Petitioner was charged with eleven offenses, and he faced a potential total sentence of 140 years. At the guilty plea hearing, the State recited the following factual basis for the Petitioner's pleas:

>> [O]n September 18th, 2012, [the Petitioner] was married to a Trisha Harshaw. ... [T]hey were separated and ... there was an Order of Protection in place preventing [the Petitioner] from assaulting or threatening any type of violence towards Trisha Harshaw.

>> The proof would be that Ms. Harshaw lived at an apartment complex. She was there at the apartment with a number of people in the apartment, to include her foster daughter, the foster daughter's—that being Kayla Thompson and her husband, as well as the kids, who would be under the age of 18. The proof would be that [the Petitioner] started calling— or calling Ms. Trisha Harshaw's cell phone.

>> At one point in time Kayla Thompson picked up the phone recognizing the number [as the Petitioner's] number and just heard rain on the other end. And it was raining that night.

>> Further proof would be that next [the Petitioner] began sending text messages to Trish Harshaw, threatening messages telling her that he was on his way over. She needs to hit the button, answer the phone.
>> Eventually he gets over to the apartment along with two other individuals and he begins banging on the door. At one point in time one of the members inside the house, they look outside. They see his face. Additionally, they're able to identify his voice. A short time after this is when bullets begin to pierce the window coming inside the apartment.

>> Further proof would be that Ms. Thompson was injured by some debris, probably some glass from the shattered window.

4

Further proof would be that they did report this to the police. The police began investigating this case, were able to locate a house or an apartment that [the Petitioner] stayed at over in Walter P. Taylor Homes with a Ms. Lisa Harris, and went to that apartment complex. In the bedroom they found a number of unspent rounds of ammunition, and these rounds of ammunition would be the same type of—same caliber, same type of the empty shell casings that were left there outside of the apartment complex, along with one unfired spent—one unfired round that was outside of the apartment complex.

Additionally, while talking to Ms. Lisa Harris, the officers talked to her about the type of—whether or not [the Petitioner] had a gun and she was able to identify a very distinctive gun which he had. And this very distinctive gun is the same type of gun that fired this type of ammunition. It's a Carbine rifle, and that's just not very prevalent.

Further proof would be that—and this was the type of rifle that was used to shoot into the apartment complex.

Further proof would be that [the Petitioner] does have at least two prior convictions involving force and violence, that being the robbery conviction and the aggravated assault conviction .... Additionally, [the Petitioner] has a number of other convictions.

The trial court specifically asked if the Petitioner was "stipulating [to] the gang enhancement provisions." Trial counsel acknowledged that the enhancement was part of the plea agreement. The State recited the factual basis for the gang enhancement:

[I]f called upon in a sentencing hearing our proof would be that [the Petitioner] is a member of—or at the time was a member of the Vice Lords. He is documented by the Knox County Sheriff's Department as being a member of Vice Lords. People—his associates, his friends, Trish Harshaw, would identify him as being a member of the Vice Lords at that time.

The State recited further proof supporting the application of the gang enhancement.

The plea agreement provided that the Petitioner would receive a total effective sentence of thirty-six years. Further, pursuant to the plea agreement, the State agreed not to refer the cases to the federal authorities.

Following the State's pronouncement, the trial court asked the Petitioner if he was under the influence of any substance(s) that might affect his understanding of the plea agreement, and the Petitioner said that he was not. The Petitioner agreed that the State had recounted the plea agreement as he understood it. The trial court asked if the Petitioner was aware he was pleading outside his range, if he had discussed it with his attorney, and if it was the Petitioner's desire to do so. The Petitioner responded affirmatively, stating that he understood the plea agreement and that he had discussed it with his attorney. The Petitioner acknowledged that he was aware of the rights he was waiving by entering guilty pleas. He said that he was entering the guilty pleas "freely, and voluntarily, and knowingly" and that he had not been threatened or coerced into entering the pleas. The Petitioner further said that he was satisfied with counsel's performance. Following the colloquy with the Petitioner, the trial court accepted the plea agreement.

\*       \*       \*

The Petitioner said that approximately two months prior to trial, he and counsel met at the detention facility, and counsel showed him the presentments and a motion for discovery. The Petitioner acknowledged trial counsel showed him audio and video recordings that counsel had obtained from the State. The recordings included the statements of the Petitioner's ex-wife, Trisha Harshaw; Kayla Thompson; Braden Thomas; and Jennifer Raff. The Petitioner said that he and counsel did not discuss the contents of the statements and that trial counsel did not bring him any "paper documents."

The Petitioner complained that trial counsel failed to interview Sherry Robinson, Danielle Davis, and Reba Turner. The Petitioner said that the witnesses would have testified that Harshaw and Thompson came to Walter P. Taylor Homes where he was staying, and Harshaw began "hitting on" him. The Petitioner said that Harshaw asked him to come to her car to sign divorce papers but that when he arrived at the car, he learned she did not have the divorce papers with her. The Petitioner opined that the testimony would have been beneficial to his defense.

The Petitioner said that he gave trial counsel the names and telephone numbers of the three potential witnesses. Approximately three weeks before

trial, trial counsel brought a private investigator to a meeting with the Petitioner. The investigator said that he was working on a murder case and asked to speak with the Petitioner later without counsel. The Petitioner agreed, but the investigator never returned. The Petitioner said that Robinson and Turner told him they were not contacted by trial counsel or the investigator. The Petitioner did not know whether trial counsel or the investigator ever spoke with Davis.

The Petitioner said he told trial counsel that he had spoken with Harshaw and that she was willing to testify that the Petitioner was not the person who shot into her house. When post-conviction counsel asked if the Petitioner discussed with trial counsel ways to impeach the State's witnesses, the Petitioner responded that he told trial counsel Thompson had a "drug habit" and requested that trial counsel obtain her medical records. He did not, however, think trial counsel complied. The Petitioner further asserted that he thought the victim's medical records "would also not show any gunshot wounds as described."

The Petitioner averred that trial counsel did not perform any pretrial investigation, noting that he never saw any documentation of the actions counsel was taking regarding the case. The Petitioner acknowledged that trial counsel said the private investigator had spoken with Harshaw, but the Petitioner complained that counsel did not reveal what was learned during that conversation. The Petitioner did not know whether trial counsel or the investigator visited the crime scene but said that he and trial counsel never discussed any evidence regarding the crime scene other than trial counsel showing the Petitioner "pictures off the disk."

\*       \*       \*

The Petitioner said he was with two other men during the shooting, but he did not have the gun when he was apprehended. Therefore, the Petitioner asked trial counsel to file a motion to suppress evidence, namely the gun that was used in the crime. Trial counsel did not file a motion to suppress.

\*       \*       \*

The Petitioner said trial counsel told him that if he did not accept the plea, he would "never see daylight." The Petitioner was concerned about counsel's failure to adequately investigate the case, and he decided to accept the plea so he would have a chance of being released. . . .

7

The Petitioner said that trial counsel never told him that he was receiving a "hybrid" sentence and asserted that he did not know what a "hybrid" sentence was. . . .

On cross-examination, the Petitioner acknowledged that he had pled guilty to several crimes in Blount and Knox Counties and that he had been represented by counsel in each of those cases. The Petitioner said that he knew his constitutional rights from those cases and by being advised by a police officer after being arrested for the shooting into Harshaw's house.

The Petitioner said that he gave a statement to the police, acknowledging that he drove a man to Harshaw's house but asserting that the man was not armed. He admitted that he was at Harshaw's house at the time the shooting occurred. He said he "probably" told the police that the shooter was "a fellow gang member."

The Petitioner agreed that he was arrested and charged by presentment and that trial counsel was appointed to represent him. He agreed that trial counsel provided him with copies of the discovery materials. He acknowledged that Harshaw and Thompson saw his face and heard his voice at the scene but claimed that they did not know his exact location at the time of the shooting.

The Petitioner conceded that he signed the plea agreement. He acknowledged that the plea agreement advised him of the charges against him, the maximum and minimum sentences he could receive on each charge, and the rights he was waiving by entering guilty pleas, but he asserted that "none of that was never read to me." The Petitioner conceded that he agreed to the "gang enhance[ment]" but maintained that trial counsel did not explain the gang enhancement. He recalled hearing the State recount the plea agreement at the guilty plea hearing and being questioned by the trial court about his understanding of the agreement. . . . He also told the trial court that he understood the plea agreement and that he was entering the guilty pleas knowingly and voluntarily.

\*        \*        \*

The Petitioner said that he affirmatively answered the questions the trial court asked during the guilty plea hearing because he felt that trial counsel "gave up" on him and did not act in his best interests. The Petitioner said that he filed a motion to "recuse" counsel, but the motion was denied.

8

Trial counsel testified that he had practiced law, primarily criminal defense, since 2001. Trial counsel was appointed to represent the Petitioner. In order to familiarize himself with the case, he spoke with the Petitioner and the prosecutor and reviewed the discovery materials.

Trial counsel said that he knew the prosecutor typically did not "back off much in terms of plea offers," that she had a reputation for being willing to try any case, and that she made plea offers that were not necessarily advantageous to defendants. When trial counsel spoke with the prosecutor, she indicated that she intended to take the case to trial. Therefore, trial counsel did not expect to get a "reasonable offer" from the State. Trial counsel believed he had to be prepared for trial because of the seriousness of the charges against the Petitioner, the Petitioner's extensive criminal history, and the potential life sentence.

Trial counsel recalled that soon after he was appointed, he met with the Petitioner then filed a motion for discovery. The discovery materials were mostly on compact discs but also included paper documents such as police reports. Between October 2012 and February 2013, he visited with the Petitioner at the detention facility approximately six times. Trial counsel took his laptop computer to the meetings to show the Petitioner what was on the discs and reviewed the discovery materials with him.

Trial counsel said that "over the holiday break," the Petitioner began writing complaint letters about counsel, and their relationship began to deteriorate. He noted that during one meeting, the Petitioner "just got up and left [counsel] in the interview room." Trial counsel made a motion for a continuance, and, during a hearing on the motion, he told the trial court about the problems he was having with the Petitioner. The trial court would not allow counsel to withdraw and reset the trial for the end of June.

Trial counsel conceded that he was not "well prepared" to go to trial in February because he and the Petitioner "had no communication at that point." Trial counsel said that he had not provided the Petitioner with copies of the paper discovery materials by the time of the February hearing because their relationship "had deteriorated to such a point." However, he provided them later. He also "printed [the Petitioner] off the law, what he was charged with[,] all the sentencing issues, and so on and so forth. So he had quite a number of documents."

Trial counsel said the Petitioner gave a statement that "put himself there [at the scene of the crime]. He made statements, you know, drug deal gone bad

9

or whatever his rationale was at that time." Trial counsel said that the Petitioner's statement "closed off a number of avenues we could pursue to defend him." Trial counsel said that the defense's greatest problem was the statement the Petitioner made to police. Accordingly, trial counsel determined that the best defense was to attempt to mitigate the charges by getting "the mens rea and actus rea down to a point where we could get a good result in front of this jury."

\*       \*       \*

Trial counsel said that as part of discovery, the State provided medical documents related to the injuries suffered by the victims. The documents reflected that a bullet ricocheted off of a window and hit Thompson's hand.

Trial counsel said that he investigated the case by reviewing the discovery materials, consulting the Petitioner, consulting the State, and hiring a private investigator to interview the witnesses. Trial counsel said that the investigator was hired approximately sixty days prior to the June trial date. The investigator went to the crime scene, and trial counsel reviewed photographs of the scene. Trial counsel said that he had intended to visit the crime scene before trial.

Trial counsel did not recall the Petitioner's providing a list of potential witnesses but acknowledged that the Petitioner may have provided such a list. Trial counsel said that he would have given the investigator any names and contact information the Petitioner provided and that the investigator would have kept trial counsel apprised of any developments in the investigation. Trial counsel said that he did not interview the witnesses because he did not "want to be in a situation where [he] became a witness in the case." He said that he tried to keep himself "away from any appearance of conflicts or impropriety with any witnesses on the case, if at all possible."

Trial counsel said the investigator interviewed the victims, but trial counsel could not recall the names of any other people the investigator interviewed. Harshaw told the investigator that she did not want to testify but that "the State was making her." Harshaw acknowledged that she would testify about what happened but that she did not want anything bad to happen to the Petitioner. Trial counsel said, "I guess some time had passed and she—she had moved on beyond that. But she was not coming to court to testify in his favor. She just wasn't." Counsel further noted that Harshaw had given a statement to the police about what occurred that night.

10

. . . . Trial counsel advised the Petitioner of all the evidence against him and discussed whether certain evidence could be suppressed. Trial counsel said that he did not file a motion to dismiss charges prior to trial, explaining that he was "not going to file a frivolous motion."

Trial counsel said that he had a good working relationship with the investigator and had worked with the investigator on previous occasions.

\*       \*       \*

Trial counsel acknowledged that he never used the word "hybrid" when discussing sentencing with the Petitioner.

On cross-examination, trial counsel said that during plea negotiations, he generally tried to obtain the best agreement possible for his clients and to present the clients with as many options as possible. He said that the choice of whether to plead guilty or proceed to trial was always made by the clients.

Trial counsel said that immediately prior to the shooting, the Petitioner sent text messages to Harshaw saying that he was coming to her residence and that Harshaw or Thompson looked out the peep hole and recognized the Petitioner. They also recognized the Petitioner's voice when he yelled and "pound[ed]" on the door. Additionally, the Petitioner gave the police a statement putting himself at the scene at the time of the shooting, which corroborated the victims' statements. Trial counsel opined that the foregoing evidence could be used to establish premeditation.

Trial counsel said that he effectively represented the Petitioner:

> I explained to him the law, explained to him what his exposure was, provided him the documentation as such, went over that thoroughly with him. Went through the evidence with him. Went through the potential—what I call preparing the case, which is taking the law and the evidence through trial practice, explaining what I think the State's going to try to do, what we could try to do, and try to explain, hey, this is what your best case scenario is, this is what your worst case scenario is.
>
> And then on top of that, if I have a plea agreement to bring my client, I explain to them, hey, this and as opposed to the preparation of the case, he can make a decision, or she can make a decision based on that analysis.

11

Trial counsel said that the Petitioner was a career offender, which could have resulted in a sentence of sixty years for the Class A conviction of attempted first degree murder. However, trial counsel negotiated a sentence of thirty years, which was a Range II sentence. Trial counsel said that the sentencing terms were set out in the plea agreement and that he discussed sentencing with the Petitioner. Trial counsel said that the sentence the Petitioner received "was to his benefit," noting that the Petitioner likely would have received a substantially longer sentence if convicted at trial. Trial counsel stated that if the Petitioner had been convicted of all of the charged offenses, he faced a maximum sentence of 140 years. Trial counsel said that if the Petitioner had been acquitted of every offense except reckless endangerment, he still faced a sentence of thirty years with release eligibility after serving sixty percent of the sentence. Trial counsel said that although the effective sentence the Petitioner received was lengthy, he could be released eventually instead of spending the rest of his life in prison.

Trial counsel said that he wanted the Petitioner to feel comfortable with pleading guilty because it was a "big decision." Trial counsel said that if the Petitioner had chosen not to plead guilty, counsel would have proceeded to trial. Nevertheless, trial counsel said that he thought going to trial was not worth the risk of being convicted and receiving an effective sentence of life imprisonment.

At the conclusion of the hearing, the post-conviction court found that the Petitioner had failed to prove trial counsel was deficient by not interviewing the witnesses suggested by the Petitioner, noting that the Petitioner did not have the witnesses testify at the post-conviction hearing. The post-conviction court found that trial counsel discussed the discovery materials with the Petitioner. The post-conviction court noted that the Petitioner potentially could have received a much greater sentence if convicted at trial and that the plea agreement was in his favor. The post-conviction court found that trial counsel was conscientious, investigated the case, communicated with the Petitioner, advised him about sentencing, reviewed the State's proof, and explained "what his chances" were. Therefore, the post-conviction court found that trial counsel was not ineffective. Further, the post-conviction court found that the Petitioner testified at the guilty plea hearing that he understood the plea agreement, that he was not under the influence of any medication that might affect his understanding of the proceedings, and that he knowingly and voluntarily wanted to plead guilty. Accordingly, the post-conviction court denied relief.

*Harshaw v. State*, at *1–8.

The Tennessee Court of Criminal Appeals ("TCCA") affirmed the post-conviction court's denial of Petitioner's ineffective assistance of counsel claims but found that application of the gang enhancement to Petitioner's sentences for his aggravated assault convictions was unconstitutional. *Id.* at *8–13. Accordingly, the TCCA vacated the application of the gang enhancement. *Id.* at *13. After the conclusion of his appeal of the denial of his petition for post-conviction relief, Petitioner attempted to re-open his petition for post-conviction relief but never successfully did so, and the TCCA dismissed his appeals associated with these attempts [*see*, *e.g.*, Docs. 7, 8, 14, 18, 19, 20, 24].

## II. STANDARD OF REVIEW

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a federal court to grant habeas corpus relief on any claim adjudicated on the merits in a state court only where that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This Court may grant habeas corpus relief under the "contrary to" clause where the state court (1) "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law; or (2) decide[d] a case differently than the Supreme Court on a set of materially indistinguishable facts." *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). The Court may grant habeas corpus relief under the "unreasonable application" clause where

13

the state court applied the correct legal principle to the facts in an unreasonable manner. *Id.* at 407.

But even an incorrect state court decision is not necessarily unreasonable. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold") (citing *Williams*, 529 U.S. at 410). Rather, this Court may grant relief for a claim decided on its merits in state court only where the petitioner demonstrates that the state court ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Also, in order for a federal court to grant habeas corpus relief, the petitioner must first exhaust his available state remedies for the claim. 28 U.S.C. §2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to have "fairly presented" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices v. Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03 (1984)). Tennessee has determined that presentation to the TCCA will satisfy the requirement of presentation to the state's highest court. Tenn. S. Ct. R. 39.

If a prisoner never presented a claim to the highest available state court and a state procedural rule now bars presentation of the claim, the petitioner procedurally defaulted that claim. *Coleman v. Thompson*, 501 U.S. 722, 731–32, 750 (1991). In such

14

circumstances, the claim is technically exhausted but procedurally defaulted. *Gray v. Netherland*, 518 U.S. 2074, 2080 (1996); *Coleman*, 501 U.S. at 732; *Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted"). Tennessee petitioners may generally proceed only through one full round of the post-conviction process, and Tennessee imposes a one-year statute of limitation on such actions. Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule).

On federal habeas review, the district court may review a procedurally defaulted claim only where the prisoner can show cause for that default and actual resulting prejudice, "or . . . that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749–50. Errors of post-conviction counsel cannot generally serve as "cause" to excuse a procedural default. *Coleman*, 501 U.S. at 753–53. But the Supreme Court established an equitable exception to this rule in *Martinez v. Ryan*, holding that the inadequate assistance of post-conviction counsel or the absence of such counsel may establish cause for a prisoner's procedural default of an ineffective assistance of trial counsel claim under certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 9, 17 (2012). The Supreme Court has described the *Martinez* exception as containing the following requirements:

> [The exception] allow[s] a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state

15

> collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Martinez*, 566 U.S. at 13–14, 16–17). This exception, commonly referred to as the *Martinez* exception, applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014).

In determining whether an ineffective assistance of trial counsel claim is substantial, the court asks whether it "has some merit and is debatable among jurists of reason." *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (citing *Martinez*, 566 U.S. at 14). Conversely, "a claim is insubstantial when 'it does not have any merit,' 'is wholly without factual support,' or when 'the attorney in the initial-review collateral proceeding did not perform below constitutional standards.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15–16).

## III. ANALYSIS

### A. Guilty Plea

Petitioner first claims that his guilty pleas were unlawfully induced and/or involuntary because his counsel coerced him into pleading guilty to an unconstitutional charge/sentence and his counsel was unaware of the meaning of the term "hybrid sentence" [Doc. 1 p. 34–36]. Petitioner exhausted a similar claim with the TCCA by asserting that his trial counsel's failures to (1) adequately investigate the case; (2) provide Petitioner with relevant information and discuss that information with him; and (3) explain the

16

consequences of his plea agreement to Petitioner "prevented [] Petitioner from making a knowing and informed guilty plea" [Doc. 48-4 p. 18–22].

In denying this claim, the TCCA cited two United States Supreme Court cases, specifically *Boykin v. Alabam*a, 395 U.S. 238, 243 (1969) and *North Carolina v. Alford*, 400 U.S. 25, 21 (1970), holding that a guilty plea must be knowing and voluntary, as well as a state court decision setting forth the relevant factors for determining whether a guilty plea meets these requirements. *Harshaw v. State*, at *9. The TCCA then stated in relevant part as follows:

> As the post-conviction court observed, the Petitioner stated at the guilty plea hearing that he was satisfied with counsel, that he understood the plea agreement, that he was not being coerced into pleading guilty, and that his guilty pleas were knowing and voluntary. This court has stated that "[a] petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations 'carry a strong presumption of verity.'" *Dale Wayne Wilbanks v. State*, No. E2014–00229–CCA–R3–PC, 2015 WL 354773, at *10 (Tenn. Crim. App. at Knoxville, Jan. 28, 2015) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).
>
> Further, trial counsel testified at the post-conviction hearing that he thoroughly investigated the case, advised the Petitioner of his chances of being convicted at trial, explained the consequences of a trial versus guilty pleas, and reviewed the terms of the plea agreement, which were favorable to the Petitioner. The Petitioner agreed that he entered the guilty pleas to avoid the much longer sentence he could have received if convicted at trial. Moreover, we note that the Petitioner, as a career offender, was no stranger to criminal proceedings, including guilty pleas. As the post-conviction court stated, although the Petitioner has "been sitting in prison for a while, doesn't like the idea of having to serve so many years[,] ... that doesn't mean that his lawyer did anything wrong or failed to do a good job." We conclude that the post-conviction court did not err by finding that the Petitioner's guilty pleas were knowingly and voluntarily entered and that that the post-conviction court did not err in denying post-conviction relief.

*Harshaw v. State*, at *9–10.

Under federal law, a guilty plea must be entered into knowingly, intelligently, and voluntarily to be valid. *Brady v. United States*, 397 U.S. 742, 748 (1970). The Court looks to the totality of the circumstances to establish "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady*, 397 U.S. at 747); *Boykin*, 395 U.S. at 242. The totality of the circumstances must show that the plea was voluntary, and that the petitioner was informed of the relevant circumstances surrounding his plea and all the direct consequences of his plea. *Brady*, 397 U.S. at 755; *Stumpf v. Mitchell*, 367 F.3d 594, 609 (6th Cir. 2004). A petitioner's representation of voluntariness at his guilty-plea hearing carries a strong presumption of veracity and constitutes "a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

When a petitioner challenges his guilty plea in federal habeas proceedings, the respondent must demonstrate that the plea was voluntary and intelligent, which is typically accomplished by producing a transcript of the plea proceedings. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The district court presumes that a state court's finding that a plea was proper is correct, unless the transcript is inadequate to support that the plea was voluntary and intelligent. *Id.* at 326–27. To withstand post-conviction challenge, the record must "leave[] [no] doubt as to whether the plea was in fact intelligent and voluntary." *Stumpf*, 367 F.3d at 600; *Boykin*, 395 U.S. at 242.

18

The record leaves no doubt that Petitioner's guilty pleas were knowing, intelligent, and voluntary. Specifically, the record establishes that, at his plea agreement hearing, Petitioner declared under oath that he had gone over the plea agreement with his attorney, understood the plea agreement and the fact that he was "pleading out of range," and that he was "freely, and voluntarily, and knowingly" agreeing to plead guilty [Doc. 48-2 p. 12–16]. As the TCCA correctly noted, these solemn declarations carry a lot of weight. *Blackledge*, 431 U.S. at 73–74.

The Court's conclusion that Petitioner's guilty pleas were proper under federal law is bolstered by the fact that, at the evidentiary hearing for his petition for post-conviction relief, Petitioner testified that he agreed to the thirty-year sentence in the plea agreement to "have a chance of getting back out" [Doc. 48-3 p. 19]. The record establishes that this was an intelligent decision, as Petitioner faced a potential sentence of up to one-hundred-and-forty-years for the charges against him, *Harshaw v. State*, at *1, and the record contains substantial evidence of Petitioner's guilt for those charges, including witnesses who saw and heard him outside of Harshaw's apartment soon before bullets came through the apartment windows, Petitioner's own statement to police that he was at the shooting, and Petitioner's texts to Harshaw before he arrived at the scene.

Moreover, the record also establishes that the prosecutor summarized the relevant portions of the plea agreement, including the gang enhancement, in open court at the hearing where Petitioner pleaded guilty [Doc. 48-2 p. 7–11, 16–19]. It further demonstrates

19

that Petitioner was very familiar with the criminal justice system at the time he agreed to plead guilty [Doc. 48-3 p. 52–54].

Nevertheless, Petitioner first asserts that his counsel "coerce[d]" him to plead guilty to an unconstitutional charge/sentence and that this makes his plea unknowing and involuntary [Doc. 1 p. 4], and he clarifies in his reply that this argument refers to the inclusion of the gang enhancement provision in his plea agreement [Doc. 60 p. 1–2]. However, as Respondent notes in his response, Petitioner did not exhaust this claim under this theory with the TCCA [Doc. 48-4 p. 18-22]. And while Petitioner's reply cites *Martinez v. Ryan* to excuse his failure to exhaust this claim, he has not established that his post-conviction counsel was deficient for not raising this claim, or that this claim is substantial.

Specifically, while the TCCA reversed the application of the gang enhancement to Petitioner's aggravated assault sentences as unconstitutional under the circumstances of Petitioner's case, *Harshaw v. State*, at *10–13, that ruling merely corrected an error in Petitioner's sentence. And the fact that Petitioner's plea agreement contained this sentencing error does not mean that Petitioner's guilty pleas were not voluntary or knowing. Moreover, Petitioner has not pointed to any evidence that his counsel "coerced" him to do anything, nor has the Court located any such evidence in the record. Thus, this argument is without merit.

Petitioner also argues that his guilty pleas were unconstitutional because his counsel was unaware of the meaning of the term "hybrid sentence" [Doc. 1 p. 4]. But the fact that

20

Petitioner's counsel was unaware of what the prosecutor meant when she used this term at the plea agreement hearing does not mean that Petitioner entered his plea agreement involuntarily or unknowingly. Nor does it mean that Petitioner (or his counsel) lacked knowledge of the relevant terms of the sentence in the plea agreement, which the prosecutor described in detail at Petitioner's plea agreement hearing after referring to it as a "hybrid sentence" [Doc. 48-2 p. 7–11]. And the record establishes that Petitioner's counsel explained the plea agreement and sentence to Petitioner prior to Petitioner pleading guilty [Doc. 48-3 p. 91–94]. Thus, this argument is likewise without merit.

Accordingly, the record establishes that Petitioner's plea agreement was voluntary and knowing, and he is not entitled to § 2254 relief for this claim.

### B.  Ineffective Assistance of Counsel

In his § 2254 petition, Petitioner asserts that his trial counsel was ineffective for:

(1)     Being unaware of the correct law before and after Petitioner's sentence;

(2)     Failing to properly investigate potential witnesses;

(3)     Failing to present Petitioner with a copy of an unspecified affidavit;

(4)     Failing to file motions that Petitioner requested;

(5)     Failing to provide Petitioner with discovery material; and

(6)     Allowing the state to rely on the same evidence to establish both aggravated assault and attempted first-degree murder.

[*Id.* at 16–33]. The Court will examine these claims in turn after setting forth the relevant standard.

21

### 1.      Standard of Review

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. A petitioner has the burden of proving ineffective assistance of his counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged

22

error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 69. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

## 2. Knowledge of the Law

Petitioner first claims that his trial counsel was unaware of the relevant law before and after Petitioner's sentence [Doc. 1 p. 6]. In his reply, Petitioner clarifies that he faults counsel for not knowing that application of the gang enhancement to his sentence was unconstitutional [Doc. 60 p. 3]. But Petitioner did not raise any such claim to the TCCA in his appeal [Doc. 48-4]. And while Petitioner cites *Martinez* to excuse his default of this claim in his reply [Doc. 60 p. 3], the TCCA vacated application of the gang enhancement to Petitioner's sentence. *Harshaw v. State*, at *10–13. As such, even if the Court assumes without finding that Petitioner could establish that his counsel was ineffective for not

23

objecting to application of the gang enhancement, the gang enhancement no longer applies

to Petitioner's sentence. Petitioner therefore cannot show prejudice, as *Strickland* requires

for Petitioner to be entitled to relief for this claim.

Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

### 3. Witnesses

In his next ineffective assistance of counsel claim, Petitioner asserts that his trial

counsel was ineffective for not investigating possible defense witnesses [Doc. 1 p. 6]. The

TCCA addressed this claim as follows:

> Further, the post-conviction court noted that although the Petitioner
> complained that trial counsel failed to fully investigate the case by neglecting
> to interview the three witnesses the Petitioner suggested, the witnesses did
> not testify at the post-conviction hearing. Generally, "[w]hen a petitioner
> contends that trial counsel failed to discover, interview, or present witnesses
> in support of his defense, these witnesses should be presented by the
> petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752,
> 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit the
> witnesses might have offered to the Petitioner's case, nor may we guess as
> to what evidence further investigation may have uncovered.
> *Id.* Accordingly, the Petitioner has failed to demonstrate prejudice in this
> regard.

*Harshaw v. State*, at *9.

The Court agrees with the TCCA that Petitioner is not entitled to relief for this claim.

As the TCCA noted, Petitioner never presented the three witnesses he asserts his trial

counsel should have investigated, and thus did not show that his trial counsel's failure to

present these witnesses caused him prejudice. *See*, *e.g.*, *Stewart v. Wolfenbarger*, 468 F.3d

338, 353 (6th Cir. 2006) (finding that the state court's conclusion that a petitioner had failed

24

to present proper evidence of what a witness's testimony would have been if he testified "was not contrary to or an unreasonable application of clearly established law").

While Petitioner argues in his reply that his failure to present these witnesses was due to ineffective assistance of his post-conviction counsel and seeks to rely on *Martinez* to excuse any procedural default [Doc. 60 p. 4–5], the *Martinez* exception only excuses procedural default of claims for ineffective assistance of counsel that post-conviction did not raise, it does not support the assertion that Petitioner's post-conviction counsel's failure to present the relevant witnesses at the evidentiary hearing may be cause to excuse Petitioner's default of this claim. *Martinez v. Ryan*, 566 U.S. 1, 9, 16, 17 (2012). To the contrary, the *Martinez* Court specified that the *Coleman* "rule" that errors of post-conviction counsel generally may not excuse a procedural default "governs in all but the limited circumstances" of its holding that ineffective assistance of post-conviction counsel may excuse a petitioner's procedural default of a substantial ineffective assistance of counsel claim. *Id.* at 16–17. Moreover, to the extent that Petitioner seeks to assert a claim for ineffective assistance of post-conviction counsel based on his allegation that his post-conviction counsel was ineffective for failing to present these witnesses, such a claim is not cognizable in this action, because Petitioner did not have the right to effective post-conviction counsel. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (providing that "[t]here is no constitutional right to an attorney in state post-conviction proceedings" and that, therefore, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings") (citations omitted). Thus, *Martinez* is not applicable to this claim,

25

and any claim for ineffective assistance of post-conviction counsel is not cognizable in this action.

Accordingly, Petitioner has not established that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and he is not entitled to relief under § 2254 for this claim.

### 4. Affidavit

Petitioner next claims that his counsel was ineffective because he did not provide Petitioner with a copy of an unspecified affidavit [Doc. 1 p. 6; Doc. 60 p. 5]. But Petitioner did not exhaust any such claim with the TCCA [Doc. 48-4]. And while Petitioner cites *Martinez* in his reply to excuse his failure to exhaust this claim, he has not established that his post-conviction counsel was deficient for not raising this ineffective assistance of counsel claim or that this claim is substantial. Petitioner presents no facts from which the Court can find that his counsel's failure to provide him a copy of the unspecified affidavit was deficient performance that prejudiced him. As such, Petitioner is not entitled to relief for this claim under § 2254.

### 5. Pretrial Motions

Petitioner next claims that his counsel was ineffective because he did not file motions as Petitioner requested [Doc. 1 p. 11; Doc. 60 p. 5]. But Petitioner did not exhaust any such claim with the TCCA [Doc. 48-4]. And while Petitioner cites *Martinez* in his reply to excuse his failure to exhaust this claim, he has not established that his post-conviction counsel was deficient for not raising this claim, or that this claim is substantial.

26

Again, Petitioner presents no facts from which the Court can find that his counsel's failure to file any motions was deficient performance that prejudiced him. As such, Petitioner is not entitled to relief for this claim under § 2254.

### 6.    Discovery Material

Petitioner next claims that his counsel was ineffective for not providing Petitioner with discovery materials [Doc. 1 p. 11; Doc. 60 p. 5]. The TCCA found that this claim had no merit because the post-conviction court credited Petitioner's counsel's testimony that he had examined the discovery materials and discussed the evidence with Petitioner. *Harshaw v. State*, at *9.

The Court agrees with the TCCA that Petitioner is not entitled to relief for this claim. In denying Petitioner's petition for post-conviction relief at the evidentiary hearing, the post-conviction court noted the parties' different accounts regarding counsel providing Petitioner with discovery but specifically found that Petitioner's counsel "did explain discovery to him" [Doc. 48-3 p. 110]. The Court notes that this finding comports with at least some of Petitioner's testimony at the evidentiary hearing, as he testified that his counsel brought him some discovery documents and went over other discovery with him [*see* Doc. 48-3 p. 10–13, 14–15]. But to the extent that this was a credibility determination, this Court will not second-guess it. *See Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (noting that the reviewing court "is not as well positioned as the trial court is to make credibility determinations"). Moreover, Petitioner does not allege or point to any evidence

27

from which the Court could determine that, if trial counsel had provided him with additional discovery materials, this would have changed the result of his proceeding.

As such, Petitioner is not entitled to relief under § 2254 for this claim.

### 7. **"Same Evidence"**

Petitioner next claims that his counsel was ineffective for allowing the state to rely on the same evidence for his aggravated assault and attempted first-degree murder convictions [Doc. 1 p. 11]. But Petitioner did not exhaust any such claim with the TCCA [Doc. 48-4]. And while Petitioner cites *Martinez* to excuse his failure to exhaust this claim in his reply [Doc. 60 p. 6], he has not established that his post-conviction counsel was deficient for not raising this claim, or that this claim is substantial.

The Double Jeopardy clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, provides that a person may not "be subject for the same offence to be twice put in jeopardy of life of limb." U.S. Const. amends. V, XIV. It protects, among other things, "against multiple punishments for the same offense" in a single proceeding. *Missouri v. Hunter*, 103 S. Ct. 673, 674 (1983) (citation omitted). The federal test to determine whether the punishment of one course of conduct under two different statutes violates double jeopardy is whether each provision "requires proof of a fact which the other does not." *Id*. (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

But in *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996), the Tennessee Supreme Court "'extended double jeopardy protection under the Tennessee constitution

28

beyond that provided by the federal constitution'" by requiring Tennessee courts to "consider . . . whether the same evidence is required to prove the offenses" for purposes of determining whether double jeopardy applied to certain offenses. *See*, *e.g.*, *State v. Braseel*, No. M2009-00839-CCA-R3-CD, 2010 WL 3609247, at *12 (Tenn. Crim. App. Sept. 17, 2010) (quoting *State v. Hall*, 947 S.W.2d 181, 183 (Tenn. Crim. App. 1997)) (citing *Denton*, 938 S.W.2d 373). This resulted in Tennessee courts concluding that where convictions for aggravated assault and attempted first-degree murder relied on the same evidence, those constitutions violated the Tennessee constitution's prohibition on double jeopardy. *See, e.g.*, *id.*

However, on March 9, 2012, which was approximately six months before the shooting incident underlying Petitioner's convictions, *see Harshaw v. State*, at *1, the Tennessee Supreme Court expressly abandoned the *Denton* "same evidence" test and adopted the federal *Blockburger* test. *State v. Watkins*, 362 S.W.3d 530, 556 (Tenn. 2012). And, as set forth above, under the *Blockburger* test, if each statutory offense contains an element that the other does not, the offenses are not the "same offense," and an individual may be convicted under both statutes without violation of his Fifth Amendment right to be free from double jeopardy. *Palazzolo v. Gorcyca*, 244 F.3d 512, 519 (6th Cir. 2001). In other words, under *Blockburger*, a second conviction under a different statute violates double jeopardy only where every violation of one statute amounts to a violation of another criminal statute. *Murr v. United States*, 200 F.3d 895, 901 (6th Cir. 2000). The *Blockburger* test requires the court to examine the proof necessary to establish the statutory

29

elements of each offense, not the specific evidence. *Illinois v. Vitale*, 447 U.S. 410, 416 (1980); *Pryor v. Rose*, 724 F.2d 525, 529 (6th Cir. 1984).

The first and second count of Petitioner's presentment charged him with attempted first-degree murder in violation of Tenn. Code Ann. §§ 39-12-101 and 39-13-202 [Doc. 48-2 p. 40]. The third, fourth, fifth, and sixth counts charged him with aggravated assault in violation of Tenn. Code Ann § 39-13-102 [*Id.* at. 40–41]. Thus, the charges against Petitioner for attempted first-degree murder required Petitioner to have acted in "[a] premeditated and intentional" manner that he believed would cause a "killing of another" without further conduct on his part, *see* Tenn. Code Ann. §§ 39-12-101 and 39-13-202, while the charges against him for aggravated assault required that Petitioner to have committed an assault by causing his victims to "reasonably fear imminent bodily injury," among other things, *see* Tenn. Code Ann. §§ 39-13-102. Accordingly, each of these offenses required at least one element that the other did not, and Petitioner's convictions for both offenses do not constitute double jeopardy under *Blockburger*. *See Braseel*, 2010 WL 3609247, at *11 (finding that Tennessee convictions for attempted first-degree murder and aggravated assault did not amount to double jeopardy under *Blockburger*).

In short, the "same evidence" test upon which Petitioner relies for this claim was no longer in effect at the time of his presentment, and Petitioner's charges for attempted first-degree murder and aggravated assault did not violate the applicable *Blockburger* double jeopardy test. As such, the "same evidence" argument Petitioner asserts his counsel should

30

have made had no merit under Tennessee law as to Petitioner's charges. And Petitioner's counsel was not required to make a meritless argument. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999). Thus, Petitioner is not entitled to relief under § 2254 for this claim.

###    C.    Unconstitutional Sentence

Petitioner's next claim for habeas corpus relief is that his sentence was unconstitutional due to application of the gang enhancement [Doc. 1 p. 7]. However, as Respondent points out and as set forth above, the TCCA vacated the application of the gang enhancement to Petitioner's sentence after finding it unconstitutional. *Harshaw v. State*, at *10–13. Thus, this claim is moot, and the Court will not address it on the merits.

###    D.    Unlawful Arrest and Presentment

Petitioner also alleges in his petition that he has newly discovered evidence that his convictions arose from "evidence obtained pursuant to an unlawful arrest" and that his counsel was ineffective for failing to challenge his presentment, which Petitioner claims did not contain elements of the charged offenses [Doc. 1 p. 8, 13]. Respondent notes that Petitioner procedurally defaulted both of these claims and has not presented cause or prejudice to excuse this default [Doc. 49 p. 22–24]. In his reply, Petitioner asserts that he needs counsel appointed to present these arguments because he is a layperson without a legal education, that he previously filed a motion for counsel, and that he relies on *Martinez* to excuse his default of these claims [Doc. 60 p. 7].

First, Petitioner is not entitled to appointment of counsel for development of these claims. As Petitioner correctly notes in his reply, the Court previously denied his motion

to appoint counsel [Doc. 9 p. 2], and the Court sees no reason to change this ruling. The decision to appoint counsel for a federal habeas petitioner generally is within the discretion of the Court, *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986), although a district court must appoint counsel for a habeas petitioner where the interests of justice or due process so require, *id.*; 18 U.S.C. § 3006A(a)(2), or where an evidentiary hearing is necessary. Rule 8(c), Rules Governing § 2254 Cases. While Petitioner is a layperson without a legal education, that is true for the vast majority of habeas corpus petitioners, and, standing alone, it is not a reason for the Court to appoint Petitioner counsel, nor does the Court see any need for an evidentiary hearing in this matter, or any other reason to appoint Petitioner counsel.

And while Petitioner cites *Martinez* to excuse his procedural default of his conclusory claim that convictions resulted from evidence obtained in an unlawful arrest, he does not allege that this is a claim for ineffective assistance of counsel to which the *Martinez* exception could apply. Instead, Petitioner generally attributes this claim to unspecified newly discovered evidence. Moreover, Petitioner does not set forth any facts from which the Court could find that his counsel knew or should have known of this claim and acted deficiently by not bringing the claim, or that this claim has any merit.

Petitioner also cites *Martinez* to excuse his failure to exhaust his claim that his counsel was ineffective for not arguing that his presentment did not contain any elements of the offenses [Doc. 1 p. 13; Doc. 60 p. 7]. But he has not established that his post-conviction counsel was deficient for not raising this claim, or that this claim is substantial.

32

To the contrary, it is apparent that this claim has no merit, as Petitioner's statement that his presentment does not contain the elements of the offenses is inaccurate [Doc. 48-2 p. 40–43]. The Court has examined the presentment and the statutory provisions it cites for each offense, and the presentment contains the elements of each offense charged therein [*Id.*]. As the Court noted above, Petitioner's counsel was not required to make a meritless argument. *Mapes*, 171 F.3d at 427.

Accordingly, Petitioner is not entitled to relief under § 2254 for either of these claims.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's requests for § 2254 relief will be **DENIED**, and this action will be **DISMISSED**.

The Court must now consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas corpus proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but

33

reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate the Court's finding that Petitioner procedurally defaulted the claims that he did not raise to the TCCA, nor would they debate the Court's finding that *Martinez* does not excuse his procedural defaults of these claims. Also, reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to his claim that his guilty pleas were involuntary or unknowing, his exhausted ineffective assistance of counsel claims, or his claims that his sentence and arrest were unconstitutional, such that they would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

34